**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Oluronke Briana Adusei,<br><br>Plaintiff,<br><br>v.<br><br>Colleen Auer, et al.,<br><br>Defendants. | No. CV-25-01722-PHX-SMB<br><br>**ORDER** |

The Court now considers Defendant Arizona College's Motion to Dismiss Plaintiff Oluronke Briana Adusei's Amended Complaint (Doc. 29).[1] The Court also considers Defendant Bonnet Fairbourn Friedman & Balint's ("BFFB") Motion to Dismiss. (Doc. 76). The Court **grants** Arizona College's Motion. The Court **grants** BFFB's Motion. The Court will give Plaintiff leave to file a Second Amended Complaint. The Court also **denies** Plaintiff's Motion to Deny Defendant Arizona College's Second Motion to Dismiss Plaintiff's Amended Complaint, which was improperly filed as a Response to Arizona College's Motion.

---

[1] Plaintiff filed the following documents in response to Arizona College's Motion: (1) Memorandum of Points and Authorities in Opposition to Defendant Arizona College's Second Motion to Dismiss (Doc. 53); (2) Motion to Deny Defendant Arizona College's Second Motion to Dismiss Plaintiff's Amended Complaint (Doc. 54); and (3) Plaintiff's Opposition to Defendant Arizona College's Second Motion to Dismiss (Doc. 56). Under Local Rule of Civil Procedure 7.2(c), Plaintiff is allowed one responsive memorandum. The Court thus relies on Plaintiff's Opposition to Defendant Arizona College's Second Motion to Dismiss as the operative Response because it is the most expansive and otherwise includes the arguments made in the other filings.

I.     **BACKGROUND**

The Court first addresses Plaintiff filing two Amended Complaints. Plaintiff filed her first Amended Complaint on June 24, 2025 (Doc. 20). On June 26, the Court issued an Order authorizing Plaintiff to file a redacted version of the Complaint. (Doc. 22 at 1.) On June 27, Plaintiff filed a Redacted Amended Complaint. (Doc. 24.) The Amended Complaint is dated May 24, 2025 (Doc. 20 at 27) and the Redacted Amended Complaint is dated May 21, 2025 (Doc. 24 at 20). The Amended Complaint relies on exhibits attached to the Redacted Amended Complaint but are not otherwise attached to the Amended Complaint. (Doc. 20 at 26.)

Arizona College's and BFFB's Motions are both based on the Amended Complaint because it is the more "expansive" pleading and otherwise contains the claims asserted in the Redacted Amended Complaint. (Doc. 29 at 2 n.1; Doc. 76 at 2.) Plaintiff does not contest this treatment in any of her responsive briefings. The Court, in its discretion and in recognition that Plaintiff is proceeding pro se, will thus treat the Amended Complaint as the operative pleading. However, the Court will refer to the exhibits attached to the Redacted Amended Complaint insofar as the Amended Complaint relies on those exhibits.

The Amended Complaint alleges as follows. Plaintiff was dismissed from Arizona College's nursing program in 2018. (Doc. 20 at 3 ¶ 8.) In response, Plaintiff sued Arizona College, represented by BFFB and Defendant Colleen Auer. (*Id.* ¶ 9.) The parties settled. (*Id.* at 4 ¶ 11.)

Plaintiff received a "lump sum of $56,744" in satisfaction of her claims but "without any explanation or allocation. (*Id.* at 6 ¶ 21.) However, the funds were "clearly identifie[d] . . . as refunds for Loans, Pell Grants, and Institutional Loans." (*Id.*) Plaintiff contends that "this lack of transparency was a calculated decision to misrepresent all funds as compensatory damages and thus subject. [sic] Plaintiffs [sic] to outrageous income tax." (*Id.* ¶ 22.) Plaintiff "explicitly and repeatedly requested that the refunded student loan and grant monies be returned to the U.S. Department of Education, as they were disbursed through Title IV federal funding." (*Id.*) However, Auer ignored this request, which was

"deliberate and conspiratorial in nature." (*Id.*)

Plaintiff continues, alleging that Arizona College and BFFB each submitted a Form 1099-MISC ("1099") to the IRS. (*Id.* at 7 ¶ 24.) The forms are alleged to report the $57,644 as "self-employment income" paid as "compensation for services rendered. (*Id.* ¶¶ 24, 27.) "This resulted in a fabricated income of $115,288 being reported to the IRS, despite the Plaintiff never working for either Defendant or receiving compensation in that amount." (*Id.* ¶ 28.) Based on these filings, "[i]n 2023, Plaintiff was blindsided by IRS notices alleging that she owed more than $30,000 in back taxes on an alleged $115,288 in unreported income." (*Id.* at 8 ¶ 31.)

After two years of "extensive correspondence," the "IRS ultimately acknowledged inconsistencies in the records and reduced [P]laintiff's tax liability to $2,000 which [P]laintiff is still disputing to make sure her account is adjusted to reflect all corrections made." (*Id.* at 10 ¶¶ 42, 44.) Thus, Plaintiff asserts a variety of claims predicated on the alleged duplicate submission of the 1099s. Plaintiff asserts a variety of claims under state and federal law.

The Court pauses to note that Plaintiff's own exhibits contradict many of her allegations. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting that the Court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice"). Plaintiff alleges that Arizona College and BFFB submitted "1099s that falsely reported the entire $57,644 as self-employment income" and "compensation for services rendered." (Doc. 20 at 7 ¶ 24, 27.) However, the attached 1099s show that the $57,655 was reported as "other income." (Doc. 24-1 at 9–11.) Plaintiff also alleges that the settlement agreement "clearly identifies the funds as refunds for Loans, Pell Grants, and Institutional Loans paid by [Plaintiff] while attending Arizona College." (Doc. 20 at 6 ¶ 20.) This allegation is both internally inconsistent and refuted by the settlement agreement itself. The Amended Complaint alleges that the $57,644 was issued to Plaintiff "without any explanation or allocation." (*Id.* ¶ 21.) This allegation appears to be true as the settlement agreement does not "itemize"

the $57,644 but only includes it as a whole figure meant to represent the settlement amount. (Doc. 24-1 at 64–77.) The Court thus ignores the Amended Complaint's allegations insofar as they are clearly in conflict with Plaintiff's attached exhibits. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as

factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See Ritchie*, 342 F.3d at 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.  DISCUSSION

The Court turns to the Motions. Arizona College and BFFB each argue: (1) that it was required to file the 1099, which obviates Plaintiff's claims; and (2) even if it wrongfully filled the 1099, the claims otherwise have defects justifying dismissal.[2] (Doc. 29 at 4.) The Courts considers each argument in turn.

### A.  Form 1099-MISC

A court in this District summarized 1099s as follows:
> An IRS form 1099 is an informational statement businesses are required to provide to the recipient of a payment in order to report certain transactions to the IRS. The requirement to issue a form 1099 is mandated by the Internal Revenue Code (hereinafter "I.R.C.") and associated Treasury Regulations (hereinafter "Treas. Regs."). Failure to issue a form 1099 may result in penalties under I.R.C. § 6721.

*Johnson v. LPL Fin. Servs.*, 517 F. Supp. 2d 1231, 1232 (S.D. Cal. 2007) (footnote omitted). *Johnson* goes on to outline a three-step analysis used "to determine what, if any, form 1099s [payers] must issue with regard to a judgment or settlement payment." *Id.* at 1233. The questions asked at each step are: (1) "is the [payer] engaged in a trade or business?"; (2) is the settlement payment gross income to [the taxpayer]?"; and (3) "how is [the payer] paying [the taxpayer]?" *Id.* Plaintiff does not materially contest the first and third elements. Plaintiff primarily argues that the second element is not met because the $57,655 does not constitute gross income. (Doc. 20 at 18 ¶ 10.)

---

[2] BFFB's Motion is almost a verbatim copy of Arizona College's Motion. Contrary to Plaintiff's argument, this does not require BFFB's Motion to be dismissed. (Doc. 77 at 2.)

- 5 -

The *Johnson* court outlined the analysis conducted under the second element as follows

> The IRS broadly defines what constitutes gross income and allows for few exceptions. Generally, income is all income from whatever source derived. *Payments of a settlement will likely fall within the broad scope of taxable income*. However, a few exceptions exist. Since the definition of gross income is very broad and the exceptions are limited, *the Court assumes a judgment or settlement payment is gross income to Plaintiff unless Plaintiff can point to the I.R.C. or Treas. Regs. to demonstrate otherwise*.

*Id.* at 1234 (citation modified) (emphasis added). Accordingly, the Court begins with the assumption that the $57,644 settlement payment was gross income to Plaintiff.

The Amended Complaint does not point to the I.R.C. or Treas. Regs. to demonstrate that the settlement payment was not gross income. In her Response, Plaintiff contests that the "settlement consisted of:" (1) "[r]efunds of federal student loans and Pell Grants"; (2) "[r]eimbursements for transcript fees"; and (3) "[p]ayments wholly unrelated to any services rendered." (Doc. 56 at 7.) Plaintiff then argues as follows:

> Under 26 C.F.R. § 1.6041-1(a)(2) and IRS Publication 970, such education-related funds are non-taxable and expressly excluded from Form 1099 reporting. Furthermore, 26 U.S.C. § 117(a) and § 108(f) confirm that financial aid and loan cancellations used for educational expenses are not includable in gross income

(*Id.*)

As made clear, Plaintiff's own exhibits belie her claim that the $57,644 comprises educational refunds or reimbursements. Additionally, Plaintiff's exhibits demonstrate that the 1099s do not represent the $57,644 as being paid in consideration for services rendered by Plaintiff. This corresponds with Plaintiff's own allegation that the $57,655 is a "lump sum" settlement payment. (Doc. 20 at 6 ¶ 21.) This renders moot Plaintiff's arguments under the various tax provisions she cites in her Response. For example, § 117(a) provides that certain scholarships are not gross income and § 108(f) provides that certain student loans are not included in gross income. However, as noted, Plaintiff's allegations and exhibits do not plausibly suggest that the $57,655 constitutes a scholarship or a student loan. Accordingly, Plaintiff has not plausibly alleged that it was improper for American

College to file a 1099.

The foregoing analysis also applies to the 1099 filed by BFFB. However, Plaintiff contends, albeit with much detail, that BFFB's 1099 was filed in error because it was duplicative. Pursuant to the settlement agreement, Arizona College paid the settlement amount to BFFB's IOLTA account, which was then paid to Plaintiff. (Doc. 24-1 at 67.) Plaintiff does not cite any authority establishing that BFFB erred by filling a 1099 based on it remitting the settlement amount to Plaintiff from its IOLTA account.

The Court will dismiss the Amended Complaint because each claim is contingent on the alleged wrongful filing of the 1099s. However, even assuming the 1099s were filed in error, the Amended Complaint still fails to plausibly state a claim for relief.

**B. Plaintiff's Claims**

The Court addresses each claim assuming the 1099s were filed in error. Even assuming as much, each of Plaintiff's claims otherwise fail.

### 1. *The Criminal Claims*

To start, Plaintiff sues Defendants under multiple criminal statutes. Plaintiff, as a private citizen, cannot enforce these statutes. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Therefore, Plaintiff cannot maintain claims asserted under § 7206, §§ 1001, 1028, 1028A, and § 13-2008. *See Pina v. Pina*, No. 25-CV-386 JLS (SBC), 2025 WL 2200731, at *3 (S.D. Cal. Aug. 1, 2025) (noting that § 7206 is a "criminal provision[] that do[es] not give rise to a private right of action"); *White v. Dietrich*, No. 1:24-CV-01395-IM, 2024 WL 3971140, at *2 (D. Or. Aug. 26, 2024) (noting that "18 U.S.C. § 1001, is a criminal statute . . . and does not create a private right of action"); *Murphy v. JP Morgan Chase*, No. 2:15-CV-0725 KJM GGH, 2015 WL 2235882, at *4 (E.D. Cal. May 11, 2015) (noting that § 1028 does not provide a private right of action); *Thomas v. Manai*, No. CV 25-00127 HG-WRP, 2025 WL 1520512, at *1 (D. Haw. Apr. 30, 2025) (noting that § 1028A does not provide a private right of action); *Mamboleo v. Wells Fargo Bank NA*, No. CV-14-00648-PHX-DJH, 2015 WL

9691022, at *7 (D. Ariz. Feb. 25, 2015), *aff'd*, 688 F. App'x 418 (9th Cir. 2017) (noting that claimants "cannot[] state a claim for civil liability . . . under A.R.S. § 13-2008).

Accordingly, the Court will dismiss the following counts with prejudice: (1) Count II insofar as it is asserted under § 7206 and § 1001; (2) Count III; and (3) Count VI.

2. *Count I: Legal Malpractice and Breach of Fiduciary Duty*

Plaintiff alleges that BFFB and Auer "colluded with Arizona College and engaged in conduct that benefited institutional actors while exposing Plaintiff to financial and legal harm. They failed to properly advice Plaintiff about the legal implications of signing IRS Form W-9 and failed to protect her from the foreseeable tax consequences of misclassified settlement funds." (Doc. 20 at 13.) Accordingly, Plaintiff alleges that BBFB's and Auer's "breach of fiduciary duty and professional responsibility directly resulted in Plaintiff being falsely taxed on non-taxable funds, leading to severe emotional, financial, and academic damage." (*Id.*) As made clear, Plaintiff does not plausibly allege that it was improper to file the 1099s reflecting a settlement amount that ostensibly Plaintiff agreed to. To the extent Plaintiff attempts to bring a legal malpractice claim predicated on facts unrelated to the filing of the 1099, there are not enough facts to allow the Court to evaluate such a claim. Thus, the Court will dismiss Count I without prejudice.

3. *Count II: 26 U.S.C. § 7434*

The Court next addresses Plaintiff's fraudulent tax reporting claim insofar as it is asserted under § 7434(a). "Under 26 U.S.C. § 7434(a) a person may not 'willfully' file a fraudulent information return with the IRS with respect to payments purported to be made to any other person. The statute authorizes the person on whose behalf the fraudulent information return was filed to bring a civil action for damages against the person who filed it." *Gidding v. Zurich Am. Ins. Co.*, No. 15-CV-01176-HSG, 2017 WL 3394150, at *2 (N.D. Cal. Aug. 8, 2017) (citation modified). "To prevail on a claim under § 7434(a), a plaintiff must prove that (1) the defendant filed an information return; (2) the information return was fraudulent; and (3) the defendant filed the fraudulent return willfully." *Id.* at *3. The Court has already established that the Amended Complaint fails to plausibly establish

that the 1099s were filed in error. Thus, the Plaintiff's fail to establish the second element of a § 7434((a) claim because the 1099s properly identified the amount and the category of the payment to Plaintiff. Thus, the Court will dismiss Plaintiff's § 7434 claim with prejudice because the 1099s were filed in accordance with the settlement agreement and the relevant law governing 1099s.

### 4. *Count IV: Negligent Infliction of Emotional Distress*

The Court next turns to Plaintiff's NIED claim. "Arizona recognizes a claim for negligent infliction of emotional distress under two distinct theories: a direct claim where a threat to the plaintiff's personal physical security resulted in shock or mental anguish, and a bystander claim, under which plaintiffs must show, among other things, that they witnessed a threat or injury to a third party." *McCaw v. Ariz. Snowbowl Resort Ltd. P'ship*, No. 2 CA-CV 2024-0196, 2025 WL 1115319, at *2 (Ariz. Ct. App. Apr. 15, 2025) (citations omitted). Plaintiff's claims, which all stem from the filing of a 1099, do not implicate the facts necessary to give rise to either a direct or bystander NIED claim. Namely, Plaintiff does not allege that she experienced "a threat to [her] personal physical security" or "witnessed a threat or injury to a third party." *See id.* Accordingly, the Court will dismiss Count IV with prejudice because the Amended Complaint does not remotely suggest that Defendants' conduct affected Plaintiff's, or a third party's, physical safety.

### 5. *Count V: Intentional Infliction of Emotional Distress*

The Court now addresses Plaintiff's IIED claim. Under Arizona law, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781, 785 (Ariz. 1989) (citation modified). IIED has three elements: (1) "the conduct by the defendant must be 'extreme' and 'outrageous'"; (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct"; and (3) "severe emotional distress must indeed occur as a result of defendant's conduct." *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz.

2005) (quoting *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)).

Plaintiff does not plausibly allege an IIED claim. To establish an IIED claim, Plaintiff must identify conduct that is "atrocious and beyond all possible bounds of decency so that an average member of the community would regard it as outrageous." *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 716 P.2d 1013, 1015 (Ariz. 1986) (citation modified). The filing of a 1099, even if in error, does not plausibly meet this standard. Accordingly, the Court will dismiss Count V with prejudice because the filing of a tax document in accordance with federal law can never be deemed extreme and outrageous.

      6. *Count VII: Discrimination and Retaliation*

The Court addresses Plaintiff's claims of discrimination and retaliation, which Plaintiff asserts under 42 U.S.C. § 2000d-3, § 1981, and § 41-1463. The Court addresses each in turn.

      a.   42 U.S.C. § 2000d-3

Plaintiff asserts a Title VI claim under § 2000d-3. That statute does not create a cause of action. That statute is a statute of construction and provides:
> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

§ 2000d-3. Plaintiff concedes that § 2000d-3 does not create a cause of action. However, Plaintiff insists they have a cause of action under Title VI pursuant to "*Blessinger v. DPS*." (Doc. 56 at 11.) The Court is unable to locate this case. The Amended Complaint is otherwise bereft of facts that would allow the Court to evaluate a Title VI claim. Accordingly, Plaintiff's claim under § 2000d-3 is dismissed with prejudice.

      b.   42 U.S.C. § 1981

Plaintiff asserts a claim under § 1981 which "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v.*

*McDonald*, 546 U.S. 470, 476 (2006). Plaintiff fails to plausibly establish or identify that a contractual relationship was impaired, much less due to racial animus. Plaintiff argues that *McDonald* "confirms that retaliation and post-settlement interference with contractual rights violate § 1981." (Doc. 56 at 11.) This argument is unconvincing. First, *McDonald* does not discuss "post-settlement interference with contractual rights." Second, and more critically, it is unclear what existing contractual relationship Plaintiff alleges was impaired based on Defendants' conduct. Plaintiff does not identify which contractual relationship was impaired in either her Amended Complaint or responsive briefing. Accordingly, the Court will dismiss Plaintiff's § 1981 claim with prejudice because it would be futile to suggest that the filing of a tax statement in accordance with federal law impairs contractual rights on the basis of race.

          c. A.R.S. § 41-1463

    Plaintiff asserts a claim under § 41-1463 which pertains to discrimination in the employment context. *See* § 41-1463(B) (discussing "unlawful employment practice[s]"). Plaintiff claims that the statute "protects against discrimination in all public accommodations, including educational settings," citing "*Ryan v. Cty. of Maricopa*" in support. (Doc. 56 at 12.) Again, the Court is unable to locate this case. This second erroneous citation aside, § 41-1463 does not discuss "educational settings" in the way Plaintiff claims. The statute discusses "education settings" in the limited instance of establishing that religious educational institutions may hire employees based on religion. *See* § 41-1463(H)(2). Accordingly, the Court will dismiss Plaintiff's § 41-1463 claim with prejudice.

        7. *Count VIII: Abuse of Process*

    The Court addresses Plaintiff's final state law claim—abuse of process. Under Arizona law, "the elements of abuse of process are (1) a willful act in the use of a judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Goldman v. Sahl*, 462 P.3d 1017, 1027 (Ariz. Ct. App. 2020) (citation modified). Plaintiff's abuse of process claim is predicated upon the misuse of the IRS tax filing system.

The filing of a 1099 does involve the use of a judicial process. Plaintiff does not cite any authority suggesting otherwise. Accordingly, the Court will dismiss Count VIII with prejudice because this case does not remotely implicate a judicial process.

### 8. *42 U.S.C. § 1983 Claim*

Plaintiff also appears to assert a claim under § 1983, although this claim is not asserted as a distinct count. To state a § 1983 claim, "a plaintiff must 'plead that (1) the defendants acted under color of state law and (2) deprived plaintiff of rights secured by the Constitution or federal statutes.'" *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en banc) (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)). Plaintiff fails to meet either element. The Amended Complaint does not plausibly allege that Arizona College, BFFB, and Auer, private parties, acted under the color of state law. These private parties interacting with the IRS does not turn them into state actors. Additionally, the Amended Complaint does not identify which right Plaintiff attempts to vindicate through a § 1983 claim. Accordingly, the Court will dismiss the § 1983 claim with prejudice because it would be futile to argue that the Defendants were state actors.

## C. Leave to Amend

"A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995). The Court will thus dismiss each Count with prejudice except for Count I and Plaintiff's § 1981 claim.

The Court issues a few words of caution. First, Plaintiff must abide by the federal and local rules of civil procedure which generally do not tolerate duplicative filings of pleadings, motions, and responsive briefings. *Ghazali v. Moran*, 46 F.3d 52, 53 ("Failure to follow a district court's local rules is a proper ground for dismissal."). Second, "although courts make some allowances for a pro se Plaintiff's failure to cite to proper legal authority, courts do not make allowances for a Plaintiff who cites to fake, nonexistent, misleading authorities" which can result in "case terminating sanctions." *Saxena v.*

*Martinez-Hernandez*, No. 2:22-CV-02126-CDS-BNW, 2025 WL 1411887, at *1 (D. Nev. May 14, 2025) (citation modified).

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED denying** Plaintiff's Motion to Deny Motion to Dismiss (Doc. 54).

**IT IS FURTHER ORDERED granting** Arizona College's Motion to Dismiss (Doc. 29).

**IT IS FURTHER ORDERED granting** BFFB's Motion to Dismiss (Doc. 76).

**IT IS FURTHER ORDERED dismissing** the following claims with prejudice: Count II, Count III, Count IV, Count V, Count VI, and Count VII.

**IT IS FURTHER ORDERED dismissing** Count I without prejudice:

**IT IS FURTHER ORDERED granting** Plaintiff leave to amend the claims dismissed without prejudice. Plaintiff may file a Second Amended Complaint within thirty (30) days of the date of this Order.

Dated this 20th day of January, 2026.

Honorable Susan M. Brnovich
United States District Judge